Minute Order Form (rev. 12/90)

# UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF ILLINOIS

| Name of Assigned Judge or Magistrate Judge | ROBERT W. GETTLEMAN | Sitting Judge if Other Than Assigned Judge | |
|---|---|---|---|
| Case Number | 99 C 8268 | Date | August 11, 2000 |
| Case Title | | Stephen Colgren, et al v County Line Cartage | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd-party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [use listing in "MOTION" box above]

(2) ☐ Brief in support of motion due ____

(3) ☐ Answer brief to motion due ____ Reply to answer brief due ____

(4) ☐ Ruling / Hearing on ____ set for ____ at ____

(5) ■ Status hearing ☐ held ☐ continued to ■ set for ☐ re-set for 8/24/00 at 9:00 a.m.

(6) ☐ Pretrial conf. ☐ held ☐ continued to ☐ set for ☐ re-set for ____ at ____

(7) ☐ Trial ☐ Set for ☐ re-set for ____ at ____

(8) ☐ Bench Trial ☐ Jury Trial ☐ Hearing held and continued to ____ at ____

(9) ☐ This case is dismissed ☐ without ☐ with prejudice and without costs ☐ by agreement ☐ pursuant to ☐ FRCP 4(j) (failure to serve) ☐ General Rule 21 (want of prosecution) ☐ FRCP 41(a)(1) ☐ FRCP 41(a)(2)

(10) ■ [Other docket entry] Memorandum opinion and order entered. Accordingly, defendant's motion to dismiss count III is denied and motion to dismiss count IV is granted.

(11) ■ [For further detail see ☐ order on the reverse of ■ order attached to the original minute order form.]

| | | ED-7 FILED FOR DOCKETING 00 AUG 11 PM 5:29 | number of notices | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | date docketed 8-14-00 | Document # |
| ■ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | docketing dpty. initials BW | 13 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate Judge. | | date mailed notice | |
| GSJ | courtroom deputy's Initials | Date/time received in central Clerk's Office | mailing dpty. initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEPHEN COLGREN, PAUL KENNEDY, DEBORAH KENNEDY, and CHARLES PETRASEK, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | No. 99 C 8268 ) ) Judge Robert W. Gettleman |
| COUNTY LINE CARTAGE, INC., | ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Stephen Colgren, Paul Kennedy, Deborah Kennedy, and Charles Petrasek have filed a five-count complaint against defendant County Line Cartage, Inc., alleging violations of state and federal law for failure to pay overtime. Specifically, plaintiffs allege: failure to pay overtime in violation of the Fair Labor Standards Act, 29 U.S.C. § 207 (Count I); retaliation in violation of the Fair Labor Standards Act, 29 U.S.C. § 215 (Count II); failure to pay overtime in violation of the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1 et seq. (Count III); retaliation in violation of the IWPCA, 820 ILCS 115/14 (Count IV); and failure to pay proper wages under the Federal-Aid Highways Act, 23 U.S.C. § 113, the Davis-Bacon Act, 40 U.S.C. § 276a, and the Illinois Prevailing Wage Act (Count V).

Defendant has filed a partial motion to dismiss, arguing that Counts III and IV are preempted by § 301 of the Labor Management and Relations Act ("LMRA"), 29 U.S.C. § 185.

1

## BACKGROUND

Plaintiffs are truck drivers employed by defendant. According to plaintiffs, they have logged over forty hours per week since they began working for defendant, but have been denied overtime pay. Plaintiffs allege that defendant employed them with the agreement that it would pay them time-and-a-half for all hours worked over eight hours per day; fifty cents more per hour than the regular rate for all second shift work; one dollar per hour more than the regular rate for all third shift work; double time for work on Sundays; one week's vacation pay if they worked at least nine hundred hours during a single calendar year; two weeks' vacation pay if they worked at least nine hundred hours during a calendar year as well as during the two preceding years; and eight hours straight time pay for certain holidays. Plaintiffs explain in their response brief that the foregoing obligations arise out of a collective bargaining agreement defendant entered into with its employees. Neither party attaches the provisions of the collective bargaining agreement that set forth defendant's obligations to pay overtime. The agreement is not incorporated into the complaint, and defendant does not attach the relevant provisions to its briefs.[1]

In Count III, plaintiffs allege that defendant's failure to pay them in accordance with the provisions of the collective bargaining agreement violates the IWPCA. In Count IV, plaintiffs allege that defendant retaliated and/or discriminated against them against them for asserting their rights under the IWPCA.

---

[1] Although the court may not consider documents outside the pleadings in ruling on a motion to dismiss, "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim. Such documents may be considered by a district court in ruling on the motion to dismiss." Wright v. Associated Ins. Cos., 29 F.3d 1244, 1248 (7th Cir. 1994).

## LEGAL STANDARD

In ruling on a motion to dismiss for failure to state a claim, the court considers "whether relief is possible under any set of facts that could be established consistent with the allegations." Bartholet v. Reishauer A.G., 953 F.2d 1073, 1078 (7th Cir. 1992). A claim may be dismissed only if it is beyond doubt that under no set of facts would the plaintiff's allegations entitle him to relief. See Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1429-30 (7th Cir. 1996). The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide its merits. See Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). For purposes of a motion to dismiss, the court accepts the factual allegations of the complaint as true and draws all reasonable inferences in favor of the plaintiff. See Travel All Over the World, 73 F.3d at 1428.

## DISCUSSION

### I. Failure to Pay Overtime in Violation of the IWPCA (Count III)

Defendant argues that because Count III cannot be adjudicated without interpreting the collective bargaining agreement between the parties, Count III is preempted by § 301 of the LMRA. "Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims substantially dependent on analysis of a collective-bargaining agreement." Caterpillar Inc. v. Williams, 482 U.S. 386, 394 (1987) (citations omitted). "[I]f the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is pre-empted and federal labor-law principles—necessarily uniform throughout the Nation—must be employed to resolve

3

the dispute." Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 405-06 (1988). If "[t]he heart of the [state-law] complaint [is] a . . . clause in the collective bargaining agreement, that complaint arises under federal law." Caterpillar, 482 U.S. at 394 (citations omitted). Specifically, "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort." Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 211 (1985).

Nevertheless, "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 or other provisions of the federal labor law." Id. at 211. "[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." Livadas v. Bradshaw, 512 U.S. 107, 124 (1994) (quoting Lingle, 486 U.S. at 413, n.12 ("A collective-bargaining agreement may, of course, contain information such as rate of pay . . . that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled")). The Livadas Court held that "when liability is governed by independent state law, the mere need to 'look to' the collective-bargaining agreement for damages computation is no reason to hold the state-law claim defeated by § 301." Id. at 125. If the court need only look to the collective bargaining agreement "to refer to bargained-for wage rates in computing the penalty, the collective-bargaining agreement is irrelevant to the dispute." Id. The Seventh Circuit has interpreted Livadas as holding that "when the collective bargaining agreement is merely a

4

tangential consideration in the resolution of an otherwise independent state law action or where resort to its provisions is merely pro forma, . . . such consultation does not trigger § 301 preemption." Loewen Group Int'l, Inc. v. Haberichter, 65 F.3d 1417, 1422 (7th Cir. 1995). As stated earlier, however, "[I]f the plaintiff's claim, ostensibly based on state law, cannot be adjudicated without interpretation of the collective bargaining agreement, the claim turns into a federal claim that the agreement itself has been violated." Brazinski v. Amoco Petroleum Additives Co., 6 F.3d 1176, 1180 (7th Cir. 1993) (citing Lingle, 486 U.S. at 411); United Steelworkers of America v. Rawson, 495 U.S. 362, 368-72 (1990).

The issue in the instant case is whether the court must interpret a provision of the collective bargaining agreement to resolve the instant dispute, as defendant argues, or whether plaintiffs are correct that the agreement itself is merely a tangential consideration in the resolution of an otherwise independent state law action. Whether § 301 preempts a given claim under a state wage act is a fact-specific inquiry. In two cases, Atchley v. Heritage Cable Vision Associates, 101 F.3d 495 (7th Cir. 1996), and National Metalcrafters v. McNeil, 784 F.2d 817 (7th Cir. 1986), the Seventh Circuit has held that a state wage act was preempted by § 301 because the nature of the plaintiff's claim required the court not only to reference, but to interpret, a provision of the collective bargaining agreement.

The employees in Atchley brought a claim against their employer under Indiana's wage payment statute, alleging that the employer was delinquent in paying wage increases due under the collective bargaining agreement. The employer contended that the employees' claim, which arose under a state statutory provision concerned with the timing of wage payments, was preempted by § 301. The Atchley court observed that to decide plaintiffs' claim, it would have

5

to determine the date on which the wage payments and bonuses were due, and to deduce that date, it would have to examine the collective bargaining agreement. Id. at 499-501. The court explained that the relevant collective bargaining agreement provision "requires interpretation, not simply reference, to determine when the local and the company agreed to the payment of the increase," and therefore concluded that the state wage act claim was preempted by § 301. Id. at 500.

In National Metalcrafters, the Seventh Circuit held that § 301 preempted the plaintiff employees' IWPCA claim for vacation benefits to which they claimed they were entitled under the collective bargaining agreement. National Metalcrafters, 784 F.2d at 824. The court concluded that the employees' action was preempted because the dispute in that case could not be resolved without interpreting the collective bargaining agreement. Id. As the court explained:

> The only basis of the state-law claim in this case is that the company broke its contract to grant vacation pay of a certain amount. No state law required that any vacation pay be given or fixed the rate of such pay if given. . . . The only thing the state law in this case requires is that the employer honor his contract. To decide whether he has done so requires interpreting the contract, unless, perhaps, the particular contractual provision is so clear as to preclude all possible dispute over its meaning, but it is not. [Id.]

The Seventh Circuit proceeded to clarify that § 301 does not automatically preempt the IWPCA:

> The [Illinois wage] act can continue to be applied in employment settings—the majority—where there is no collective bargaining contract and no labor dispute within the purview of the National Labor Relations Board. And even if there is a contract, if its meaning is so clear that the company cannot in good faith dispute the worker's vested rights to benefits under it, the state will not be prevented from enforcing the wage payment act by section 301 . . ., as interpreted in this opinion. [Id. at 828].

The instant case is factually quite similar to National Metalcrafters. The only basis for plaintiffs' state law claim is that defendant broke its contract to grant employees a certain amount of overtime pay for a certain amount of work. Just as the IWPCA does not mandate vacation

6

pay, it does not mandate overtime pay, but merely requires that the employer pay its employees the wages it has promised them. The amount and rate of overtime pay due plaintiffs is governed by the collective bargaining agreement. Accordingly, to determine whether defendant in the instant case violated the IWPCA by failing to honor its contract, the court will have to look to the overtime provisions of the collective bargaining agreement. National Metalcrafters suggests, however, that if the agreement provision establishing defendant's overtime policy is "so clear as to preclude all possible dispute over its meaning," the court might not have to interpret the agreement to decide whether defendant violated the IWPCA. at 824. The Supreme Court's opinion in Livadas further reinforces the notion that the mere need to refer to the collective bargaining agreement does not automatically trigger § 301 preemption.

Because neither party has submitted to the court the relevant provisions of the collective bargaining agreement at issue, and because the complaint on its face alleges a clear, unambiguous contractual obligation, it is impossible for the court to decide at this juncture whether the agreement "requires interpretation, not simply reference." Atchley, 101 F.3d at 500. The court therefore cannot determine whether plaintiffs' claim is preempted by § 301.[2] Accordingly, defendant's motion to dismiss Count III is denied.

---

[2]Defendant appears to contend that under National Metalcrafters, any claim arising under § 14 of the IWPCA, which is the only section of the statute that explicitly punishes "willful" withholding of wages, necessarily requires interpretation, and is therefore preempted. In support of this contention, Defendant quotes National Metalcrafters for the proposition that, "[A] determination that a contract is so clear as to make a breach willful . . . is an interpretation of the contract." National Metalcrafters, 784 F.2d at 823. Because plaintiffs do not explicitly refer to § 14 in Count III, and for the reasons stated in the court's discussion of Count IV, the court assumes that Count III does not arise under § 14.

7

## II. Retaliation in Violation of the IWPCA (Count IV)

In Count IV, plaintiffs allege that because defendant retaliated and/or discriminated against them for asserting their rights under the IWPCA by reducing their hours, it violated § 14 of the IWPCA. Section 14(c) states, in relevant part: "any employer . . . who knowingly discharges or in any other manner knowingly discriminates against any employee because that employee has made a complaint to his employer . . .that he or she has not been paid in accordance with the provisions of this Act, . . . is guilty, upon conviction, of a Class C misdemeanor." 820 ILCS 115/14(c). Defendant moves to dismiss this claim, arguing that the IWPCA is preempted by § 301 in cases involving collective bargaining agreements.

As the above discussion demonstrates, § 301 does not automatically preempt the IWPCA in such cases. Rather, "[t]he Court has found preemption only when a provision of the collective bargaining agreement is the subject of the dispute or the dispute is substantially dependent upon an analysis of the collective bargaining agreement." Loewen, 65 F.3d at 1423. Moreover, the Supreme Court has held that § 301 does not preempt retaliatory discharge claims in situations in which Illinois courts recognize that tort, because the elements of retaliatory discharge "pertain[] to the conduct of the employee and the conduct and motivation of the employer," and do not "require[] a court to interpret any term of a collective-bargaining agreement." Lingle, 486 U.S. at 407. Because a retaliatory discharge claim can be resolved without construing the collective bargaining agreement, the Lingle Court concluded that "the state-law remedy . . . [wa]s 'independent' of the collective-bargaining agreement" and was therefore not preempted by federal law. Id.

8

Plaintiffs' claim differs significantly from the claim raised in Lingle, however. The plaintiff in Lingle alleged retaliatory discharge for filing a worker's compensation claim. Plaintiffs must be alleging a retaliatory tort claim, because § 14 provides for criminal penalties that cannot be recovered in a civil action. Although Illinois courts recognize the tort of retaliatory discharge in the worker's compensation context, the Illinois Supreme Court "has consistently sought to restrict the common law tort of retaliatory discharge." Fisher v. Lexington Health Care, Inc., 722 N.E.2d 1115, 1121 (Ill. 1999).

In this regard, the Illinois Appellate Court recently refused to extend the tort of retaliatory discharge to a plaintiff's claim that he was fired for exercising his rights under the IWPCA. McGrath v. CCC Information Servs., Inc., 731 N.E.2d 384 (Ill. App. Ct. 2000). The McGrath court also declined to find that the IWPCA contained an implied civil remedy for damages due to retaliatory discharge, concluding that the criminal penalties provided for in § 14(c) of the IWPCA sufficiently safeguarded the purposes of the statute.[3] Id. at 392-93. Plaintiffs do not even allege retaliatory discharge, but instead allege less severe forms of retaliation. The Illinois Supreme Court "has thus far declined to recognize a cause of action for retaliatory constructive discharge or retaliatory demotion." Fisher, 722 N.E.2d at 1121. Given the holding in McGrath and Illinois courts' reluctance even to recognize a cause of action for less severe forms of retaliation, the court concludes that Illinois courts would not recognize plaintiffs' claim that they were retaliated against for exercising their rights under the IWPCA. Defendant's motion to dismiss Count IV is granted.

---

[3]Defendant submitted the McGrath case to the court as supplemental authority in support of its motion to dismiss.

9

## CONCLUSION

Defendant's motion to dismiss Count III is denied and the motion to dismiss Count IV is granted. This matter is set for a report on status August 24, 2000, at 9:00 a.m.

**ENTER:** **August 11, 2000**

Robert W. Gettleman
United States District Judge